UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| CAPSTONE STUDIOS, CORP., <br><br> Plaintiff, <br><br> vs. <br><br> JOEL OSWALD, <br><br> Defendant. | CIV. NO. 25-00416 SASP-WRP <br><br> FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |

FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT

Before the Court is Plaintiff Capstone Studios, Corp.'s (Plaintiff)

Motion for Default Judgment (Motion), ECF No. 24.  Defendant Joel Oswald

(Defendant) did not respond to the Motion, and Plaintiff did not file a reply

memorandum.  The Court finds this Motion suitable for disposition without a

hearing pursuant to Rule 7.1(c) of the Local Rules of Practice of the United States

District Court for the District of Hawai'i.  After careful consideration of the record

in this action and the relevant legal authority, the Court FINDS AND

RECOMMENDS that Plaintiff's Motion be GRANTED.[1]

---

[1] Within fourteen days after a party is served with the Findings and
Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written
objections in the United States District Court.  A party must file any objections

1

BACKGROUND

This copyright action arises out of Defendant's unauthorized actions of downloading, streaming, and distributing Plaintiff's motion picture, *Fall* (Work). See First Amended Complaint, ECF No. 14 ¶¶ 18, 79-82.  Plaintiff "is the owner of the copyright in the Work."  Id. ¶ 18.  Defendant used the YTS website to "download torrent files associated with the Work and/or stream the Work."  Id. ¶ 23.  According to the First Amended Complaint (FAC), Defendant used the BitTorrent protocol to download, stream, and distribute Plaintiff's Work without authorization, as discussed below.  See id. ¶¶ 13-15, 55, 65, 80.

"The Defendant is a member of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a 'swarm.'"  Id. ¶ 8.  "The particular BitTorrent swarm is associated with a unique 'hash' number[.]"  Id.  Plaintiff's Work had a hash number.  See id.  "The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network.  In short, to reduce the load on the source computer, rather than downloading a file from a single source computer . . . the BitTorrent protocol allows users to join a 'swarm' of host computers to download and upload from

within the fourteen-day period to preserve appellate review of the Findings and Recommendation.

each other simultaneously[.]" Id. ¶ 26. "Here, Defendant participated in a swarm and directly communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions." Id. ¶ 46.

"[T]he infringing file copies of Plaintiff's Work added the word 'YTS' to the file titles to 'brand' the quality of piracy files[.]" Id. ¶ 63. "The word YTS is not included in the file title of legitimate copies or streams of . . . Plaintiff's Work. The initial seeder of the Work altered the title to falsely include the word 'YTS' as copyright management information (CMI)." Id. ¶ 64. "The file copies Defendant distributed to other peers in the [s]warm included this altered CMI in the file title." Id. ¶ 65. "Defendant knew that the YTS website from which he obtained the torrent files was distributing illegal copies of the Work." Id. ¶ 66. "For multiple years including through 2025, the United States Trade Representative listed YTS as a notorious piracy website." Id. ¶ 67.

Defendant knew that YTS was not the author or licensed distributor of Plaintiff's Work. See id. ¶¶ 69-70. Defendant also knew "that the CMI that included YTS in the file name was false." Id. ¶ 71. Further, "Defendant knew that the file copies of the Work that he distributed to other peers in the [s]warm included the altered CMI without the authority of Plaintiff." Id. ¶ 71. Moreover, "Defendant received from Plaintiff's agent via his Internet Service Providers at

least a first notice per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act (DMCA) . . . requesting him to stop infringement of the Work via BitTorrent protocol." Id. ¶ 9.

An investigation identified forty-four (44) IP addresses, from the cellular network of Verizon Wireless, as sharing copies of Plaintiff's Work via BitTorrent. See id. ¶¶ 49-59; see also Ex. 3 to Motion, ECF No. 14-3 at 8-9. "Verizon wireless confirmed that over 40 of the IP addresses shown in Exhibit '3' were assigned to Defendant at the time of the confirmed infringements." FAC, ECF No. 14 ¶ 57. "For over 4 months, Defendant shared copies of Plaintiff's Work via BitTorrent on the addresses shown in Exhibit '3.'" Id. ¶ 58.

Plaintiff filed the Complaint on September 25, 2025 and its FAC on January 26, 2026. See Complaint, ECF No. 1; FAC, ECF No. 14. The FAC asserts claims for (1) direct copyright infringement (Count I); (2) contributory copyright infringement (Count II); and (3) DMCA violations (Count III). See FAC, ECF No. 14 ¶¶ 77-106.

At the outset of this action, Plaintiff did not know the identity of Defendant. See Complaint, ECF No. 1 ¶¶ 8-10. On October 29, 2025, the Court granted Plaintiff's Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference (Order) so that Plaintiff could ascertain the identity of Defendant. See Order, ECF No. 13. The Order extended the deadline to serve

4

Defendant to February 24, 2026.  See id. at 7.  On February 24, 2026, Plaintiff filed

the executed summons, indicating that Defendant had been personally served on

February 10, 2026.  See Summons Returned Executed, ECF No. 20.  On March 5,

2026, default was entered against Defendant.  See Clerk's Entry of Default, ECF

No. 22.  The present Motion followed.

## DISCUSSION

Default judgment may be entered if the defendant has defaulted by

failing to appear.  See Fed. R. Civ. P. 55(b).  The grant or denial of a motion for

default judgment is within the discretion of the court.  Haw. Carpenters' Trust

Finds v. Stone, 794 F.2d 508, 511-12 (9th Cir. 1986).  Default judgments are

ordinarily disfavored, and cases should be decided on their merits if reasonably

possible.  Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).  The court should

consider the following factors in deciding whether to grant a motion for default

judgment:

> (1) the possibility of prejudice to the plaintiff;
> (2) the merits of plaintiff's substantive claim;
> (3) the sufficiency of the complaint;
> (4) the sum of money at stake in the action;
> (5) the possibility of a dispute concerning the material facts;
> (6) whether the default was due to excusable neglect; and
> (7) the strong policy underlying the Federal Rules of Civil Procedure
>      favoring decisions on the merits.

Id. at 1471-72 (citation omitted).

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)).  The allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to which it is entitled.  See Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Also, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citations omitted).

## A. Jurisdiction

Before considering the merits of default judgment, the Court has an affirmative obligation to determine whether it has subject matter jurisdiction over this action and personal jurisdiction over Defendant.  See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").  This action arises under the United States Copyright Act.  See FAC, ECF No. 14 ¶ 1.  Accordingly, the Court is satisfied that it has federal question jurisdiction over Plaintiff's claims. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

The Court also has personal jurisdiction over Defendant because he was properly served in accordance with the Federal Rules of Civil Procedure (FRCP).  See Travelers Cas. & Sur. Co. of Am. v. Brenneke, 551 F.3d 1132, 1135 (9th Cir. 2009) ("A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with [FRCP] 4"); see also Summons Returned Executed, ECF No. 20.

### B.  Eitel Factors

Following a determination that jurisdiction is proper, the Court must consider whether default judgment is appropriate under the Eitel factors outlined above.

### 1.  The Possibility of Prejudice to Plaintiff

The first factor considers whether Plaintiff would suffer prejudice if default judgment is not entered.  See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002).  Defendant has not defended against Plaintiff's claims in this case at all.  Defendant neither responded to the FAC nor entered an appearance in this case.  Absent entry of default judgment against Defendant, Plaintiff would be without recourse for the claims in this case. Therefore, the first Eitel factor favors default judgment.

### 2.  Merits of Plaintiff's Substantive Claims

As noted above, for purposes of liability, the factual allegations in the complaint are taken as true on default.  See TeleVideo Sys., Inc., 826 F.2d at 917-18; Fair Hous. of Marin, 285 F.3d at 906.  In its FAC, Plaintiff asserts three claims: (1) direct copyright infringement; (2) contributory copyright infringement; and (3) DMCA violations.  See FAC, ECF No. 14 at 13, 15-16.  The Court will address each in turn.

To state a claim for copyright infringement, Plaintiff must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Pubs., Inc. v. Rural Telephone Serv. Co., Inc., 499 U.S. 340, 361 (1991).  According to the FAC, Plaintiff is the owner of the copyrights for the Work.  See FAC, ECF No. 14 ¶ 6.  Further, the FAC alleges that Defendant used the BitTorrent protocol to download, stream, and distribute Plaintiff's Work without authorization.  See id. ¶¶ 13-15, 55, 65, 80.  The Court therefore FINDS that Plaintiff has stated a claim for direct copyright infringement.

To state a claim for contributory copyright infringement, Plaintiff must establish that Defendant "(1) ha[d] knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement."  Perfect 10, Inc. v. Visa Int'l Serv., Ass'n, 494 F.3d 788, 795 (9th Cir. 2007).  "Put differently, liability exists if the defendant engages in personal conduct that encourages or assists the infringement."  A&M Records, Inc. v. Napster Inc., 239

F.3d 1004, 1019 (9th Cir. 2001).  Here, Defendant participated in BitTorrent swarms with other people, allowing them to infringe Plaintiff's copyrights.  See FAC, ECF No. 14 ¶¶ 46, 90-92.  Moreover, Defendant had knowledge that his peers in the swarm were also infringing Plaintiff's Work.  See id. ¶¶ 69-76. Defendant even received a DMCA Notice "requesting him to stop infringement of the Work via BitTorrent protocol."  Id. ¶ 9.  Accordingly, the Court FINDS that Plaintiff has stated a claim for contributory copyright infringement.

Finally, a person violates section 1202(a) of the DMCA if he or she "knowingly and with the intent to induce, enable, facilitate or conceal infringement-- (1) provide[s] copyright management information that is false, or (2) distribute[s] or import[s] for distribution copyright management information that is false."  17 U.S.C. § 1202(a).  Further, a person violates section 1202(b) of the DMCA if he or she, "without the authority of the copyright owner or the law-- (1) intentionally remove[s] or alter[s] any copyright management information, (2) distribute[s] or import[s] for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or (3) distribute[s], import[s] for distribution, or publicly perform[s] works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing or with respect to

civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b).

Here, Defendant knew that CMI in the file names of the pieces of Plaintiff's Work "had been altered to include the wording 'YTS.'" FAC, ECF No. 14 ¶ 99. Moreover, Defendant distributed these file names, including the false wording, to others. See id. ¶ 100. Further, "Defendant knew that the wording 'YTS' originated from the notorious movie piracy website for which he had registered accounts and/or actively used." Id. ¶ 101. The Court therefore FINDS that Plaintiff has stated a claim for DMCA violations.

"Once [Plaintiff] learns the defendant's identity, it cannot rely on a bare allegation that a defendant is the registered subscriber of an IP address associated with infringing activity to state a plausible claim for direct or contributory copyright infringement." Strike 3 Holdings, LLC v. Andaya, No. 21-CV-00760-VKD, 2021 WL 5123643, at *3 (N.D. Cal. Nov. 4, 2021) (citing Cobbler Nevada, LLC v. Gonzales, 901 F.3d 1142, 1144 (9th Cir. 2018)). "Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle. A plaintiff must allege something more to create a reasonable inference that a

10

subscriber is also an infringer." Id. (citing Cobbler Nevada, LLC, 901 F.3d at 1145).

Here, Plaintiff has alleged sufficient additional facts to establish Defendant's identity. First, "over 40 of the IP addresses" shown in Exhibit 3 of the FAC as infringing Plaintiff's Work were assigned to Defendant, and "are from the *cellular* network of Verizon Wireless." See FAC, ECF No. 14 ¶¶ 57-59 (emphasis added). Moreover, it is highly unlikely that "a neighbor or unauthorized guest to have used Defendant's Verizon Wireless Internet service to download and share copies of Plaintiff's Works without Defendant's knowledge for over 3 months." Id. ¶ 60. Further, the FAC asserts that Defendant had registered for an account with YTS, "[a] notorious movie piracy website." Id. ¶ 101. Accordingly, the Court is satisfied that, taking all factual allegations as true, the FAC adequately pleads each of its three counts.

### 3. Sufficiency of the Complaint

As discussed above, the allegations in the Complaint are sufficiently plead. Therefore, this factor weighs in favor of default judgment as to all claims in the FAC.

### 4. Sum of Money at Stake

The Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176.

Here, Plaintiff seeks a total of $4,000 in statutory damages.  See Memorandum in

Support of Motion, ECF No. 24-1 at 21, 24.  As discussed below, the Court finds

that Plaintiff is entitled to damages in this amount from Defendant.  Insofar as the

sum of money at stake is not too large or unreasonable in relation to Defendant's

conduct, the Court finds that this factor weighs in favor of default judgment.  See

Langer v. Euclid Ave., LLC, No. 19-CV-2384 DMS (DDL), 2022 WL 3588320, at

*4 (S.D. Cal. Aug. 22, 2022) ("Courts disfavor default judgment when the 'sum of

money at stake is too large or unreasonable in relation to the defendant's conduct.'"

(citation omitted)).

### 5.  Possibility of Dispute Concerning Material Facts

As noted above, the well-plead factual allegations of the Complaint,

except those relating to the amount of damages, will be taken as true.  See

TeleVideo Sys., Inc., 826 F.2d at 917-18.  Defendant has been given a fair

opportunity to defend this action and has not done so at all.  Therefore, the Court

finds that this factor favors default judgment.

### 6.  Whether Default Was Due to Excusable Neglect

"The sixth Eitel factor considers whether defendant's default may

have been the product of excusable neglect."  Ho v. Tan Trinh, No. 8:16-CV-481-

JLS-JCGX, 2016 WL 11520810, at *5 (C.D. Cal. Oct. 27, 2016) (citation omitted).

"This factor favors a default judgment when the defendant has been properly

served or the plaintiff demonstrates that the defendant is aware of the lawsuit." Id.
(citation omitted).   As noted above, Defendant was properly served with the FAC.
See Summons Returned Executed, ECF No. 20.  The Court therefore finds that this
factor favors entry of default judgment.

### 7.  Policy Favoring Decisions on the Merits

Defendant's default renders a decision on the merits impractical, if not
impossible.  Under Rule 55, "termination of a case before hearing the merits is
allowed whenever a defendant fails to defend an action." PepsiCo, Inc., 238 F.
Supp. 2d at 1177; see Philip Morris, USA, Inc. v. Castworld Prods., Inc., 219
F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b)
indicates that the seventh Eitel factor is not alone dispositive").  Here, Defendant
has failed to defend this action and has consequently rendered adjudication on the
merits before this Court impracticable.  This factor does not preclude the Court
from entering default judgment against Defendant.

### 8.  Totality of the Eitel Factors

The Court finds that the totality of the factors discussed above weighs
in favor of entering default judgment against Defendant as to all claims in the FAC.

### C. Remedies

Although a defendant's default establishes liability, it does not
establish all relief to which a plaintiff is entitled.  A plaintiff must provide evidence

to support its requested relief and that relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

Plaintiff seeks the following remedies:

(1)  injunctive relief "permanently barring Defendant from directly and contributorily infringing Plaintiff's copyrights in the Work"; and

(2)  statutory damages in the amount of $4,000.[2]

Memorandum in Support of Motion, ECF No. 24-1 at 24.  The Court will consider each in turn.

### i.       Injunctive Relief

First, Plaintiff requests injunctive relief "permanently barring Defendant from directly and contributorily infringing Plaintiff's copyrights in the Work."  Id. at 21.  This Court has authority to grant such an injunction pursuant to 17 U.S.C. § 502(a), which states that "[a]ny court having jurisdiction of a civil action under [the United States Copyright Act] may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).

---

[2] In its FAC, Plaintiff sought broader relief than described here.  For example, in the FAC, Plaintiff sought the statutory maximum in damages, exceeding $150,000 total.  See FAC, ECF No. 14 at 18.  The Court, however, considers the relief requested in Plaintiff's Motion.

14

"[A] plaintiff seeking permanent injunctive relief must satisfy a four-factor test by showing:

(1) that it has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction."

Cottonwood Env't Law Center v. United States Forest Serv., 789 F.3d 1075, 1088 (9th Cir. 2015) (citing eBay Inc. v. MercExchange LLC, 547 U.S. 388, 391 (2006)).

Plaintiff explains:

Defendant's distribution of Plaintiff's Work is causing Plaintiff irreparable harm by threatening the royalties Plaintiff receives from distribution agreements.  Money damages are not adequate to compensate Plaintiff for the loss of control over its Work, the damage to its business goodwill, and the harm to the development of a legitimate online distribution market[.]  The hardship Plaintiff will face if the Court denies Plaintiff injunctive relief greatly outweighs any harm to the Defendant.  That is, *the Defendant would suffer no harm from being enjoined from engaging in unlawful conduct*[.]  The public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming and motion pictures[.]  Plaintiff respectfully submits that Defendant's failure to appreciate the seriousness of this proceeding demonstrates that there is a high likelihood of continuing violations of Plaintiff's copyright if Defendant is not enjoined.

Memorandum in Support of Motion, ECF No. 24-1 at 22-23 (emphasis added) (citations omitted).  The Court FINDS that Plaintiff has met its burden and is entitled to a permanent injunction enjoining Defendant from directly and contributorily infringing Plaintiff's copyrights in the Work.  See Strike 3 Holdings, 2023 WL 3102567, at *4.

Additionally, Plaintiff seeks an order requiring Defendant to destroy all copies of the Work that he made or used in violation of Plaintiff's copyrights. See id. at 24.  The Court has authority to issue this order pursuant to 17 U.S.C. § 503(b), which states that "[a]s a part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be produced."  17 U.S.C. § 503(b).  The Court FINDS that Plaintiff is entitled to such an order. Because the injunctive relief sought is reasonable to prevent or restrain infringement of Plaintiff's copyrights, the Court FINDS and RECOMMENDS that the District Court GRANT Plaintiff's requests for injunctive relief as set forth in its Motion.

### ii.  Statutory Damages

Finally, Plaintiff seeks $4,000 in statutory damages.  See Memorandum in Support of Motion, ECF No. 24-1 at 21.  Plaintiff first seeks $1,500 in statutory damages for Defendant's infringements of the Work.  See id. at 19.   Plaintiff is entitled to these damages pursuant to 17 U.S.C. § 504(c), which states that "[t]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c).  The Court finds Plaintiff's request for $1,500 in damages to be reasonable.

Plaintiff also seeks $2,500 in statutory damages for Defendant's CMI violations of the DMCA.  See Memorandum in Support of Motion, ECF No. 24-1 at 20.  Plaintiff is entitled to these damages pursuant to 17 U.S.C. § 1203(c)(3)(B), which states that, "[a]t any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000."  17 U.S.C. § 1203(c)(3)(B).  The Court finds that Plaintiff's request for the minimum statutory damages is reasonable.  Accordingly, the Court FINDS and RECOMMENDS that the District Court GRANT Plaintiff's request for $4,000 total in statutory damages.

CONCLUSION

17

The Court FINDS and RECOMMENDS that the District Court:

- GRANT Plaintiff's Motion for Default Judgment, ECF No. 24;

- GRANT Plaintiff's request for injunctive relief "permanently barring

  Defendant from directly and contributorily infringing Plaintiff's copyrights

  in the Work";

- ORDER Defendant to destroy all copies of the Work that he made or used in

  violation of Plaintiff's copyrights; and

- AWARD statutory damages in favor of Plaintiff in the amount of $4,000.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, May 28, 2026.



_/s/   Wes Reber Porter_
Wes Reber Porter
United States Magistrate Judge

Capstone Studios, Corp. v. Joel Oswald; Civ. No. 25-00416 SASP-WRP;
FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT.